[Civ. No. 50843. Second Dist., Div. One. Aug. 4, 1977.]

DON H. TERRY et al., Plaintiffs and Appellants, v.
RALPH W. JAMES et al., Defendants and Respondents.

**COUNSEL**

Hollopeter & Terry and Don H. Terry for Plaintiffs and Appellants.

Ruprecht, Delich & U'Ren, Farhad Kazemzadeh, Lawrence B. Parker, Charles B. Sheppard, Andrew S. Keerskov, Helen V. Byard and Sam D. Delich for Defendants and Respondents.

## OPINION

**LILLIE, J.**—Plaintiffs brought an action for declaratory relief seeking a determination that defendants' properties are subject to certain covenants, conditions, and restrictions allegedly part of a general plan for the development of a tract of property known as Hartwood Point. Defendants' motion for summary judgment was granted, and plaintiffs appeal.

Appellants do not contest the propriety of the summary judgment procedure in this case, rather they challenge the correctness of the judgment. From the documents before the trial court on the motion for summary judgment and as revealed by the court's findings, it appears that in 1952 Phillips and Elizabeth Finlay were the owners of certain real property comprising approximately 26 acres known as Hartwood Point. Beginning in that year the Finlays conveyed seven parcels of property out of Hartwood Point to certain individuals as follows (acreage is approximate): (1) 5.89 acres to Lowell Palmer by deed of February 29, 1952; (2) 1.40 acres to George T. and Anna M. Richter by deed of December 17, 1952, (3) 5.15 acres to Lowell Palmer by deed of January 21, 1953; (4) 3.94 acres to Ralph W. and Myrtle D. James by deed of January 29, 1953; (5) 1.69 acres to Anderson C. and Dorothy S. Ong by deed of April 21, 1954; (6) 0.98 acres to John F. and Nettie M. Galbraith by deed of May 16, 1959; and (7) 6.43 acres to Ralph W. and Myrtle B. James by deed of August 17, 1959. All deeds were recorded. Plaintiffs are successor in interest to and owners of property included in the first conveyance to Lowell Palmer, (1) above.

The Finlays did not record a subdivision map or any declaration of restrictions applicable to Hartwood Point. However, in each of the deeds numbered (1), (2), (3), (4), and (6) there appears a statement substantially in the following form: "IT IS UNDERSTOOD AND AGREED that this conveyance is made by the Grantor and accepted by the Grantee pursuant to a plan of the Grantor to maintain present rural residential nature of this property and that the same is for the direct benefit of the property hereinafter described (except for the most Southerly 150 feet thereof bordering on New York Drive) of which this granted property is a part; said land is hereby granted upon and subject to the following covenants, conditions, restrictions and reservations (in addition to any above recited), which covenants, conditions, restrictions and reservations shall run with the land in favor of Grantor, his heirs or assigns, and shall continue to be in full force and effect until January 1, 2000. The property referred to is described as follows:"

There follows a legal description of all of Hartwood Point and a list of some 11 or 12 restrictions regarding the property conveyed. These restrictions are similar in many but not all respects. Each of these deeds also provided that the grant was subject to "covenants, conditions, restrictions, reservations, easements and rights of way hereinafter mentioned and of record." Deed (5) contained one express condition to run for 25 years; and deeds (5) and (7) provided that the property was subject only to "Covenants, conditions, restrictions, reservations, easements, rights and/or rights of way of record, if any."

It appears that defendants intend to erect condominiums on their properties, an act which apparently would violate one or more of the restrictions listed in some of the deeds. ■ Appellants' position is that implied reciprocal equitable servitudes benefiting and burdening each parcel of Hartwood Point arise from the Finlays' general plan of development of the tract. Failing proof of a general plan, they argue that their right to enforce restrictions in the various deeds results from their status as third party beneficiaries of the deed provisions. Respondents' major point is that no general plan exists which would give rise to mutual equitable servitudes; thus the deeds containing no restrictions are unrestricted and even for those deeds containing the restrictions, the right of enforcement is personal to the grantor, his heirs, and assigns, which does not include appellants.

■ The parties agree that the case of *Werner* v. *Graham,* 181 Cal. 174 [183 P. 945] governs the instant matter. According to *Werner,* a general plan of real estate development can give rise to mutual equitable servitudes only when both the grantor and grantee intend that the land conveyed is to be restricted pursuant to a general plan, that intent appears in the deed, the parties' agreement shows that the parcel conveyed is subject to restrictions in accordance with the plan for the benefit of all the other parcels in the subdivision and such other parcels are subject to like restriction for its benefit, and the dominant and servient tenements are adequately shown. (Pp. 183-185; *Trahms* v. *Starrett,* 34 Cal.App.3d 766, 770-771 [110 Cal.Rptr. 239].) "In such a case the mutual servitudes spring into existence as between the first parcel conveyed and the balance of the parcels *at the time of the first conveyance.* As each conveyance follows, the burden and the benefit of the mutual restrictions imposed by preceding conveyances as between the particular parcel conveyed and those previously conveyed pass as an incident of the ownership of the parcel, and similar restrictions are created by the conveyance as between the lot conveyed and the lots still

retained by the original owner." (Italics added, pp. 183-184; *Riley* v. *Bear Creek Planning Committee,* 17 Cal.3d 500, 507 [131 Cal.Rptr. 381, 551 P.2d 1213].) ▆ Plaintiffs' complaint tracks this very language; they claim that the " 'covenants, conditions and restrictions' in the deeds attached to each parcel conveyed and the balance of the parcels retained by the grantors, including those of the defendants, *at the time of the first conveyance.* That as each conveyance followed the burden and benefit of the mutual restrictions passed as an incident of ownership." (Italics added.)

Appellants' position is manifestly ill-founded. There is nothing in the original deed from the Finlays to Palmer, plaintiffs' predecessor in interest, suggesting that the land retained by the Finlays is subject to any restriction; nor is there any agreement that future conveyances of land in Hartwood Point would be made subject to such restrictions. The imposition of restrictions on the land conveyed to Palmer does not mean that the Finlays impliedly placed the same restrictions on the land retained by them. (See *Wing* v. *Forest Lawn Cemetery Assn.,* 15 Cal.2d 472, 481 [101 P.2d 1099, 130 A.L.R. 120].) ▆ The deed constitutes the final and exclusive memorial of the understanding of the parties; it is to be strictly construed in favor of the free and unrestricted use of the property. (*Werner* v. *Graham,* 181 Cal. 174, 185 [183 P. 945].) Palmer, the original taker, could not have enforced any restrictions as against the Finlays, and appellants have no greater rights as against subsequent grantees of the Finlay property. (See 26 C.J.S., Deeds, § 167(3), p. 1154.)

Appellants urge that the deeds to respondents, while the final and exclusive memorials of the agreements between grantor and grantees, must be construed in light of the circumstances existing at the time of their execution; that in the case of each of defendants' deeds there existed prior deeds to other parties with roughly the same restrictions, and the property had been developed in accordance therewith. But appellants' effort to discern a general plan by construing later deeds in light of earlier ones from which in themselves no general plan appears, runs afoul of *Werner* v. *Graham. Werner,* at pages 184-185, rejects a line of cases to the effect that ". . . when it appears that the owner of a subdivision tract has sold various lots in it from time to time and in each conveyance has exacted restrictive covenants which, it is evident, when all the deeds are considered together, were exacted in accord with a common plan, it is enough, and that mutual equitable servitudes have been created, although in any single deed taken by itself there is nothing to indicate any intent to create such reciprocal rights." Appellants insist

that their approach is endorsed by *Werner* in that they urge construction of a later deed in light of earlier ones rather than vice versa. However, it is in the nature of a general plan that it gives rise to reciprocal equitable servitudes. If a general plan affecting the whole of Hartwood Point were found on the basis of deeds subsequent to that to Palmer, Palmer's land would be subsumed under the general plan where, as has already been said, no general plan could be found on the basis of Palmer's deed itself. This, of course, is the result clearly disapproved by *Werner*.

■ The decision of the trial court is sustainable on a second ground, namely, that there is insufficient uniformity in the various deeds to support the theory of a general plan. ■ *Moe* v. *Gier,* 116 Cal.App. 403, 409 [2 P.2d 852] holds: "To create an equitable servitude in the grant of lands in a large area it is essential that there must be a general scheme of restrictions sufficiently uniform in character to indicate unmistakably a designated and adopted plan throughout common to all purchasers of lots. The restrictions must not only appear in one deed, but in all the deeds. . . ." Of course some variety is to be expected inasmuch as it is common to plan for the development of some parcels in a manner different from but complementary to the majority of the parcels; often this depends on the geographical location of the parcels in the development tract. For example, in this case a 150-foot strip of land fronting in a highway was unrestricted presumably because, as appellants suggest, this area was a natural exception from the otherwise rural character of the land. However, appellants make no attempt to explain why only five of the seven parcels were restricted in anything approximating the same way. In two of the seven deeds, including the last of the Finlays' property, which together comprise about one-third of Hartwood Point there are essentially no restrictions. Even among the five with restrictions there is significant disparity. In the first deed to Palmer, it was provided that the 5.89-acre plot "Shall not be divided into more than two residential lots. . . ." The deed to the Richters of 1.40 acres provided "There shall be constructed only one single family dwelling house. . . ." The second deed to Palmer of 5.15 acres has no restriction on division of the property or the number or kind of buildings to be placed on it.[1] The first deed to the James of 3.94 acres and the one to the Galbraiths of 0.98

---

[1]"No buildings shall be used for any single family residential purpose unless the premises are provided with adequate modern plumbing appliances connected with sewer or cesspool for the disposal of all sewage and liquid refuse" is the restriction, which in other deeds also includes the provision "There shall be constructed only one single family dwelling house, together with customary out-buildings including a private garage."

acres reverts to the "only one single family dwelling house" provision. True, there are other restrictions common to the five deeds, including a property line set-back restriction and height limitations, which may well have placed restraints on development. But if this is a general plan it is a very odd sort. Of the roughly two-thirds of the property having the restrictions almost one-third was apparently subject to unlimited subdivision (the second Palmer deed). The Galbraiths could build one house on one acre of land, and the James on their first parcel one house for roughly four acres, while the second Palmer property bore no such limitations. If one were to try to define what restrictions were to be implied, assuming a general plan, which of the other deeds would be the model for the restrictions?

Appellants suggest that even in the absence of a general plan they may enforce the deed restrictions as third party beneficiaries of the agreements between the grantor and respondents. Even if this were true, the second James property, having no such restrictions in the deed, would not be affected. However, appellants have cited and we have found no California authority for their theory.

The third party beneficiary analysis is one of several theories used to explain how a prior purchaser of property restricted pursuant to a general plan may enforce the restrictions against a subsequent purchaser. (See 2 American Law of Property (1952) §§ 9.29-9.30, pp. 415-427.) As might be expected, inasmuch as the third party beneficiary approach explains the operation of a general plan, the concepts ordinarily appear in tandem rather than separately. It seems that there is some question whether, in the absence of a general plan and in a context like that present here, there is any place for third party beneficiary analysis. (See *Rodgers* v. *Reimann* (1961) 227 Ore. 62 [361 P.2d 101, 104], citing cases on both sides of the question.)

It is only through an interpretative reading of California case law that this state's position on the question is revealed. California cases consistently reject the use of the third party beneficiary argument where it is used as a substitute for a general plan. In *Riley* v. *Bear Creek Planning Committee,* 17 Cal.3d 500, 505 [131 Cal.Rptr. 381, 551 P.2d 1213], the court said: "*Inasmuch as there is no privity of contract between defendants and plaintiffs,* [] [defendants'] right to enforce use restrictions against plaintiffs depends upon whether or not the restrictions sought to be enforced are comprehended within mutually enforceable equitable servitudes for the benefit of the tract." (Original brackets; italics added.)

The court cited *Trahms* v. *Starrett,* 34 Cal.App.3d 766, 772 [110 Cal.Rptr. 239]; *Ross* v. *Harootunian,* 257 Cal.App.2d 292, 295 [64 Cal.Rptr. 537], and the dissenting opinion in *Girard* v. *Miller,* 214 Cal.App.2d 266 at pages 278-279 [29 Cal.Rptr. 359], all of which are to the effect that in circumstances like those present here the third party beneficiary approach must fail for lack of privity of contract.

Privity of contract is an elusive notion. It was once confidently defined as the relationship which subsists between two contracting parties. (3 Bouvier's Law Dict. (Rawle's 3d rev. 1914) p. 2722.) This use of the concept is now largely outmoded; and the concept itself is of greatly diminished consequence today. (See 4 Corbin on Contracts (1951) § 778, p. 29.) Of course, a third party beneficiary is never in privity of contract in this original sense. The explanation for the invocation of the privity requirement in these cases must be that California has rejected the use of the third party beneficiary doctrine as a substitute for the creation of mutual equitable servitudes pursuant to a general plan of building development.

The judgment is affirmed.

Wood, P. J., and Hanson, J., concurred.