*1122
 
 Opinion
 

 FRANSON, J.
 
 *
 

 Introduction
 

 This appeal presents the question: do certain grant deeds made subject to “[a]ll reservations, conditions and restrictions of record” adequately incorporate by reference a previously recorded “Declaration of Covenants, Conditions and Restrictions” (CC&Rs) by which the grantors established a general plan for the development and use of a particular subdivision? The answer is yes, so that the restrictions contained in the CC&Rs constitute “mutual equitable servitudes.” We will affirm the judgment.
 

 The Case
 

 Respondents Fig Garden Park No. 1 Homeowners Association (Association) and Charles McAlexander sued appellant Assemi Corporation in 1988 to permanently enjoin appellant from developing land it owned within a subdivision of Fresno, known as Figarden Park, in alleged violation of CC&Rs recorded in 1945. After a nonjury trial, the court granted the injunction, having found provisions of the CC&Rs were enforceable to restrict development within the subdivision.
 

 The Facts
 

 The following facts are undisputed. In December 1945, a map of the Figarden Park subdivision was recorded in Fresno County. The subdivision, which consisted of 68 lots, was generally bounded by Gettysburg Avenue to the north, Santa Fe and Ashlan Avenues to the south, Fruit Avenue to the east and Teilman Avenue to the west. At the same time, O.J. Woodward, Atha Woodward O’Connor and Saida Woodward, owners and “prospective vendors” of the subdivision, recorded CC&Rs relating to the real property. By the terms of the CC&Rs, the owners (also referred to herein as grantors): “create[d] and established] as a general plan for the improvement, development, use and occupation of said real property [13] covenants, restrictions and limitations, upon and subject to which said real property . . . [should] be sold, conveyed, improved, used and occupied.”
 

 Among the 13 restrictions, the CC&Rs provided in pertinent part:
 

 
 *1123
 
 “1. No building other than one single family residence and its appurtenant garage or garages, and other necessary and usual outbuildings . . . shall be erected upon any building plot in said tract. . . .
 

 “2. No building or structure shall be erected or maintained on any building plot in said tract nearer than 35 feet from the front property line or nearer than 15 feet from the side lines of any building plot.
 

 “3. The word ‘plot’ as herein used refers to any individual site for a residence, together with the grounds in connection therewith .... No structure shall be erected on any building plot which plot has an area of less than 10,000 square feet or a width and frontage of less than 100 feet. However any lot plotted on the recorded map can be used as a residential building plot.”
 

 Between 1946 and 1952, the owners conveyed, by grant deeds, six of the lots (lots 45-46, 51-54) to appellant’s predecessors in interest. Each of these grant deeds included the following language: “This deed is made subject to: . . . 3. All reservations, conditions and restrictions of record . . . .”
 

 In 1986, appellant acquired by grant deed all of lot 46 and portions of lots 45 and 51 through 54. The deeds contained no references to recorded conditions or restrictions. These parcels are contiguous and amount to approximately two and a half acres. By 1987, appellant obtained a conditional use permit from the City of Fresno to construct a 12-unit residential planned unit development (PUD) on its Figarden Park lots. The PUD’s density and setbacks would not comply with the restrictions quoted above and contained in CC&Rs.
 

 Soon thereafter, property owners within Figarden Park formed the respondent Association, which is a nonprofit public benefit corporation organized to promote the residents’ general welfare. Respondent McAlexander, who was the initial president of the Association, has owned lot 26 in the subdivision since 1969.
 

 Introduction
 

 “Ordinarily, a general plan of restriction is recorded by the subdivider grantor for the purpose of insuring the uniform and orderly development and use of the entire tract by all of the original purchasers as well as their successors in interest. The restrictions are imposed upon each parcel within the tract. These subdivision restrictions are used to limit the type of buildings that can be constructed upon the property or the type of activity permitted on the property, prohibiting such things as commercial use or
 
 *1124
 
 development within the tract, limiting the height of buildings, imposing setback restrictions, protecting views, or imposing similar restrictions.”
 
 (Sain
 
 v.
 
 Silvestre
 
 (1978) 78 Cal.App.3d 461, 466 [144 Cal.Rptr. 478], fns. omitted.)
 

 Since there is no privity of contract between appellant and respondents, respondents’ right to enforce land use restrictions against appellant depends on whether the restrictions constitute mutually enforceable equitable servitudes for the benefit of the subdivision.
 
 (Riley
 
 v.
 
 Bear Creek Planning Committee
 
 (1976) 17 Cal.3d 500, 505 [131 Cal.Rptr. 381, 551 P.2d 1213].)
 

 “[W]hen the owner of a subdivided tract conveys the various parcels in the tract by deeds containing appropriate language imposing restrictions on each parcel as part of a general plan of restrictions common to all the parcels and designed for their mutual benefit, mutual equitable servitudes are thereby created in favor of each parcel as against all the others. The agreement between the grantor and each grantee in such a case as expressed in the instruments between them is both that the parcel conveyed shall be subject to restrictions in accordance with the plan for the benefit of all the other parcels and also that all other parcels shall be subject to such restrictions for its benefit. In such a case the mutual servitudes spring into existence as between the first parcel conveyed and the balance of the parcels at the time of the first conveyance.”
 
 (Werner
 
 v.
 
 Graham
 
 (1919) 181 Cal. 174, 183 [183 P. 945].)
 

 There must be language in the written instruments between the parties which refers to a common plan of restrictions or reflects any agreement between the grantor and grantee that the lot conveyed is taken subject to such a plan. (181 Cal. at pp. 184-185.)
 

 I. Incorporation by Reference
 

 Appellant contends the original deeds conveying lots 45, 46 and 51 through 54 contain no reference to the CC&Rs, thereby rendering the restrictions unenforceable. According to appellant, if the original grantors had intended to convey the lots subject to the restrictions, they could have easily made specific reference to the recorded CC&Rs in the grant deeds. Citing
 
 Murry
 
 v.
 
 Lovell
 
 (1955) 132 Cal.App.2d 30 [281 P.2d 316], it urges the original deeds must either set forth the restrictive language in full or specifically incorporate the terms of the CC&Rs. Appellant misreads the case law.
 

 In
 
 Murry,
 
 after subdividing the land and recording restrictions, the grantor sold lots to plaintiff and defendant and in the process orally informed the
 
 *1125
 
 buyers of the restrictions. The deeds, however, did not contain
 
 any
 
 reference to the restrictions. (132 Cal.App.2d at pp. 31-32.) The appellate court found insufficient proof to establish the existence of equitable servitudes.
 
 (Id.
 
 at p. 32.) Nowhere in the opinion is mention made of a need to specifically incorporate the terms of the restrictions.
 

 By contrast, going back to
 
 Martin
 
 v.
 
 Holm
 
 (1925) 197 Cal. 733, 740 and 745 [242 P. 718], California courts have accepted
 
 nonspecific incorporations by reference
 
 as sufficient evidence of the grantor and grantee’s agreement to create equitable servitudes. In Martin, the grantors began to sell off lots from a parcel of land they owned. In the first sale the grantors and grantee recorded a separate agreement between them restricting the use of the entire parcel to residential purposes.
 
 (Id.
 
 at pp. 736-738.) The deed on the second sale included a similar restrictive covenant.
 
 (Id.
 
 at pp. 738-739.) In a subsequent conveyance, the deed was “ ‘subject to any existing encumbrance appearing of record.’ ”
 
 (Id.
 
 at p. 740.) The Supreme Court held:
 

 “[E]ach purchaser from the owners was aware of the plan, and took with the understanding that all the deeds were to contain the covenant, and bought with that consideration in view.”
 
 (Martin, supra,
 
 197 Cal. at p. 745.)
 

 By implication the
 
 Martin
 
 court endorsed the use of “subject to” language as a means of satisfying the
 
 Werner
 
 requirements.
 

 The appellate court in
 
 Sain
 
 v.
 
 Silvestre, supra,
 
 78 Cal.App.3d 461 endorsed an incorporation by reference very similar to the present case. In
 
 Sain,
 
 at page 468, the grantor recorded a “Declaration of Restrictions” to establish a general plan for the development of an entire tract. Thereafter, the grantor conveyed lot 17 of the tract by a grant deed which provided it was subject to “ ‘Conditions, restrictions, reservations, covenants, easements, rights and rights of way of record, if any.’ ”
 
 (Ibid.)
 
 The appellate court ruled the restrictions created by the grantor constituted equitable servitudes by virtue of: (1) the recorded “Declaration of Restrictions” containing the general plan and (2) the subsequent conveyance of lot 17 by deed in which the “Declaration of Restrictions” was incorporated by reference.
 
 (Id.
 
 at p. 470.)
 

 The issue in these cases is the intent of the grantors and grantees at the time of the conveyance.
 
 (Werner
 
 v.
 
 Graham, supra,
 
 181 Cal. at p. 183.) In this regard, the deed is “the final and exclusive memorial of whatever intention may have existed.”
 
 (Martin
 
 v.
 
 Holm, supra,
 
 197 Cal. 733, 742; see also
 
 Riley
 
 v.
 
 Bear Creek Planning Committee, supra,
 
 17 Cal.3d at p. 507.) The original deeds here provided that the conveyances were subject to “[a]ll reservations, conditions and restrictions of record.” The unmistakable
 
 *1126
 
 meaning of this language, in the absence of some contrary proof, was that the grantee agreed to the restrictions contained in the CC&Rs. By incorporating all restrictions of record in the deeds, the grantors and grantees intended to create mutual rights in the subdivision.
 
 (Werner, supra,
 
 181 Cal. at p. 185.)
 

 II. A Common Plan
 

 Appellant also contends the restrictions are unenforceable because the original deeds contain no statement of a common plan for development of the subdivision. It relies upon
 
 Fees
 
 v.
 
 Williams
 
 (1931) 212 Cal. 688, 690 [300 P. 30], which holds restrictions cannot be enforced by one lot owner against another unless the covenant or restriction specifically states it is for the benefit of the other lot owners. Appellant apparently reads into this holding a requirement that the original grant deed must contain a statement of common plan for the entire parcel.
 

 Assuming the original deeds in this case adequately incorporated by reference the CC&Rs, appellant’s argument is devoid of merit. As mentioned above, the CC&Rs specifically established the 13 restrictions “as a general plan for the improvement, development, use and occupation of [the entire Figarden Park subdivision].” Furthermore, the CC&Rs expressly stated:
 

 “15. Each and all of said covenants, restrictions and conditions are for the mutual benefit of all of said real property and of each and every lot and part thereof, and shall inure to the benefit of, and pass and run with each and every lot and part thereof, and shall apply to and bind the undersigned and the respective transferees, successors and assigns to the undersigned, and all future owners of any right, title or interest in any lot or part thereof; and each and all of said covenants, restrictions and conditions are imposed upon said real property, and each lot and part thereof, as a servitude in favor of each and every lot or part thereof as a dominant tenement.”
 

 Appellant also cites
 
 Terry
 
 v.
 
 James
 
 (1977) 72 Cal.App.3d 438 [140 Cal.Rptr. 201] and
 
 Moe
 
 v.
 
 Gier
 
 (1931) 116 Cal.App. 403 [2 P.2d 852] for the proposition that the failure to insert restrictions in the original deeds can reasonably be interpreted to mean that the original grantor did not intend to create a common plan. However, neither decision stands for such a rule. In
 
 Terry
 
 the deeds contained restrictions but nothing with regard to a common plan.
 
 (Terry, supra,
 
 72 Cal.App.3d at pp. 441-444.) Likewise, in
 
 Moe,
 
 some deeds included restrictions but there was nothing to indicate the restrictions were part of a common plan restricting the use of the lots in the tract.
 
 (Moe, supra,
 
 116 Cal.App. at p. 406.)
 

 
 *1127
 
 Because the general plan for Figarden Park is contained in the recorded CC&Rs and the CC&Rs are incorporated by reference in the original grant deeds, the restrictions contained in the CC&Rs constitute mutual equitable servitudes. The trial court, therefore, properly granted the permanent injunction.
 

 Disposition
 

 The judgment is affirmed.
 

 Martin, Acting P. J., and Thaxter, J., concurred.
 

 *
 

 Retired Presiding Justice of the Court of Appeal, Fifth District, sitting under assignment by the Chairperson of the Judicial Council.