Filed 10/31/18

**CERTIFIED FOR PUBLICATION**


**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**


| | |
|---|---|
| ALEX CHEVELDAVE,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>TRI PALMS UNIFIED OWNERS<br>ASSOCIATION,<br><br>    Defendant and Respondent. | E066461<br><br>(Super.Ct.No. PSC1600368)<br><br>ORDER MODIFYING OPINION;<br>AND DENIAL OF PETITION<br>FOR REHEARING<br><br>[NO CHANGE IN JUDGMENT] |

The petition for rehearing filed by respondent on October 18, 2018, is denied.

The opinion filed in this matter on October 3, 2018, is modified as follows:

On page 17 of the opinion, the paragraph that begins "A mutual easement has the

same meaning as a reciprocal easement," is modified, inserting footnote No. 4, as

follows:

"A mutual easement has the same meaning as a reciprocal easement:  "[A]

general plan of real estate development can give rise to mutual equitable servitudes only

when both the grantor and grantee intend that the land conveyed is to be restricted

pursuant to a general plan, that intent appears in the deed, the parties' agreement shows

1

that the parcel conveyed is subject to restrictions in accordance with the plan for the benefit of all the other parcels in the subdivision and such other parcels are subject to like restriction for its benefit." (*Terry v. Jones* (1977) 72 Cal.App.3d 438, 442.) Thus, mutual easements are defined by a "mutuality of obligation." (*Welsch v. Goswick* (1982) 130 Cal.App.3d 398, 405.)[4]"

The beginning paragraph on page 19, which starts "The Association contends it owns an office . . . ," is deleted and replaced with the following:

"The Association contends it owns an office, and the office constitutes a common area. The Association fails to explain how the Association's ownership of an office constitutes a common area for homeowners. Due to the Association's failure to provide relevant analysis, we find its contention about office ownership to be unpersuasive. (*Central Valley Gas Storage LLC v. Southam* (2017) 11 Cal.App.5th 686, 694-695).[5]"

Footnote No. 4 on page 25 of the opinion is renumbered footnote No. 6.

Footnote No. 5 on page 26 of the opinion is renumbered footnote No. 7.

---

[4] The Association's August 17, 2018, request for judicial notice is denied as to the portion of the request concerning legislative history. (*Temple Community Hospital v. Superior Court* (1999) 20 Cal.4th 464, 467, fn. 1.) The August 17, 2018, request for judicial notice is granted as to the portion of the request concerning the Association's deed. (*Herrera v. Deutsche Bank National Trust Co.* (2011) 196 Cal.App.4th 1366, 1375).

[5] We have taken judicial notice of a deed reflecting the Association was granted property within Riverside County. By granting the Association's request for judicial notice, we have noticed the deed exists, but we have not noticed the truth of its contents. (*Herrera v. Deutsche Bank National Trust Co.*, *supra*, 196 Cal.App.4th 1366, 1375).)

Except for these modifications, the opinion remains unchanged.  The modifications do not effect a change in the judgment.

CERTIFIED FOR PUBLICATION

<u>MILLER</u>
J.

We concur:

<u>McKINSTER</u>
Acting P. J.


<u>CODRINGTON</u>
J.

3

Filed 10/3/18 (unmodified opinion)

**CERTIFIED FOR PUBLICATION**


**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**


| | | |
|---|---|---|
| ALEX CHEVELDAVE, | | |
| Plaintiff and Appellant, | | E066461 |
| v. | | (Super.Ct.No. PSC1600368) |
| TRI PALMS UNIFIED OWNERS ASSOCIATION, | | OPINION |
| Defendant and Respondent. | | |


APPEAL from the Superior Court of Riverside County.  Harold W. Hopp, Judge.  Reversed.

Law Offices of Leonard Cravens, Leonard Jack Cravens; Zimberoff Deutsch and Daniel E. Zimberoff for Plaintiff and Appellant.

Epsten Grinnell & Howell, Anne L. Rauch, Joyce J. Kapsal and Rian W. Jones for Defendant and Respondent.

1

Tri Palms Unified Owners Association (the Association) is a group of homeowners in the Tri-Palms Estates.[3] There is a recreation facility adjacent to the Tri-Palms Estates, and homeowners pay a fee for that recreation facility. In 2014, in bankruptcy proceedings, Kort & Scott Financial Group, LLC (K&S) was the successful bidder on the recreation facility. The Association entered into a settlement agreement (the Agreement) with K&S. As a result of the Agreement, some members of the Association were required to pay an increased fee for the recreation facility.

In 2016, Alex Cheveldave and Richard N. Davis, who were members of the Association, sued the Association, K&S, and Shenandoah Ventures, L.P., arguing that the Association did not have standing to enter into the Agreement. The Association filed an anti-SLAPP motion (Code Civ. Proc.,[4] § 425.16), which the trial court granted. Cheveldave contends the trial court erred by granting the anti-SLAPP motion. We reverse the judgment.

## FACTUAL AND PROCEDURAL HISTORY

A.   PROPERTY

Tri-Palms Estates was a real estate development consisting of 10 separate housing tracts. Each housing tract had its own set of covenants, conditions, and restrictions (CC&Rs). There was a recreation facility adjacent to the housing tracts,

---

[3] In the record, respondent's name and the real property development are sometimes written as "Palms" (plural) and, at other times, as "Palm" (singular).

[4] All subsequent statutory references will be to the Code of Civil Procedure unless otherwise indicated.

which was a separately owned facility. Tri-Palms Estates' various CC&Rs required homeowners to pay fees for the recreation facility.

The recreation facility had been in continuous operation since the early 1960s and consisted of an 18-hole regulation golf course, a nine-hole executive golf course, a 15,000-square foot clubhouse, a public restaurant, three large swimming pools, two spas, tennis courts, a shuffleboard complex, a pro shop, banquet facilities, a 1,000-square foot arts and crafts building, and offices. Throughout the years, there have been various owners of the recreation facility. In 2003, in a recorded "Master Declaration," property owners within Tri-Palms Estates formed the Association for the purpose of communicating with the management of the recreation facility and for supervising compliance with the CC&Rs.

B.    PRIOR TRIAL COURT CASE

In 2008, the recreation facility was owned by The Club at Shenandoah Springs Village, Inc. (Shenandoah). The Association and Karla Wilson, a homeowner within the Association, brought a class action against Shenandoah. The Association and Wilson alleged that Shenandoah received $3,700,000 per year in fees from members of the Association. The Association and Wilson accused Shenandoah of (1) allowing the general public to use the recreation facility for additional fees, thus depriving the homeowners of their exclusive use of the recreation facility; (2) charging homeowners unauthorized use and cleaning fees—in addition to the monthly fees already being paid; and (3) mismanaging the fees received from homeowners.

On June 18, 2012, following a trial, the Riverside County Superior Court found Shenandoah breached the governing documents by not maintaining the recreation facility in a reasonable manner and by charging fees in excess of those permitted by the governing documents. The court also found that the homeowners had a nonexclusive easement for the use and enjoyment of the recreation facility, and therefore, Shenandoah could permit the public to use the recreation facility.

The trial court issued a permanent injunction requiring Shenandoah to maintain the recreation facility in a reasonable manner and to hire and retain a professional management company to operate the recreation facility. The injunction prohibited Shenandoah from charging homeowners a greater amount of fees than those provided for in the governing documents. The trial court awarded the Association approximately $365,648.88 plus interest for attorneys' fees.

C.    BANKRUPTCY CASE

In May 2007, Shenandoah borrowed $15,000,000 from General Electric; the loan was secured by the recreation facility. On November 28, 2012, General Electric recorded a notice of default and election to sell under deed of trust against the recreation facility, alleging at least $11,486,181 was owed. A receiver was to be appointed on December 4. On December 3, Shenandoah filed a petition for Chapter 11 bankruptcy in the United States Bankruptcy Court, Central District of California, Riverside Division. The Association filed a claim as a secured creditor.

Shenandoah sought to increase the fees paid by homeowners. The CC&Rs permitted the fees to be recalculated based upon the consumer price index; however,

4

such an increase had not occurred "for years." The Association opposed Shenandoah's recalculation of the fees. In January 2014, the Association and Shenandoah participated in a mediation concerning the increased fees, but the issue was not resolved. The Association then filed a demand for arbitration against Shenandoah.

In March 2014 Shenandoah sought the bankruptcy court's permission to sell Shenandoah's assets. Shenandoah hoped to sell the recreation facility to Inspire Communities for $15,000,000 with $850,000 used exclusively for improvements and repairs on the recreation facility. The Association was worried that the bankruptcy court would soon grant Shenandoah's motion to sell the recreation facility, and therefore entered into a settlement agreement (the Agreement) with Inspire Communities. The Agreement required the Association to (1) withdraw its arbitration case, and (2) permit Shenandoah's suggested fee increase, in exchange for Inspire Communities agreeing to (a) maintain the recreation facility as required by the state trial court's 2012 injunction, and (b) not having the increased fees be retroactive to an earlier date

In May, the bankruptcy court held a hearing on Shenandoah's motion for authorization to sell the recreation facility. The Association was at the hearing. The bankruptcy court granted the motion. The court approved K&S as the successful bidder and explained that K&S substituted into the Agreement for Inspire Communities. In the bankruptcy court's order it wrote, "The Court approved K&S as the successful bidder at the hearing on the Motion in lieu of Inspire Communities, in part, based on K&S'

5

agreement on the record in open court to the terms and conditions of the Inspire Settlement Agreement."

### D. CURRENT CASE

#### 1. *COMPLAINT*

In January 2016, Cheveldave and Davis (collectively, Plaintiffs) sued the Association, K&S, and Shenandoah Ventures, L.P. Cheveldave owned property within Tri-Palms Estates, and Davis also owned property within Tri-Palms Estates. Plaintiffs alleged there is no common property within Tri-Palms Estates, that Tri-Palms Estates is not a common interest development, and therefore the Association did not have the authority to enter into the Agreement on behalf of the homeowners. Plaintiffs asserted that the fee increase set forth in the Agreement was void because such an increase can only occur upon a vote to amend the CC&Rs.

Plaintiffs sought a declaration that (1) Tri-Palms Estates is not a common interest development; (2) the fee increase is a breach of the CC&Rs; and (3) "that [the] bankruptcy settlement agreement is void."

#### 2. *ANTI-SLAPP MOTION*

The Association filed an anti-SLAPP motion. (§ 425.16.) The Association asserted Plaintiffs' complaint arose from protected activity because it concerns the settlement agreement that resulted from an arbitration proceeding, which was connected to bankruptcy proceedings. The Association asserted that the Agreement concerned the Association's right to petition in a judicial proceeding. (§ 425.16, subd. (e)(1).)

6

The Association contended Plaintiffs did not have a probability of prevailing because the bankruptcy court's judgment was final. The Association argued that the state trial court "lacks subject matter jurisdiction to adjudicate the claims and causes of action in Plaintiffs' Complaint." The Association further asserted that principles of res judicata caused Plaintiffs to be estopped from obtaining relief. The Association contended that Plaintiffs, as members of the Association, were in privity with the Association, and thus bound by the terms of the Agreement.

### 3. *OPPOSITION*

Plaintiffs opposed the Association's anti-SLAPP motion. Plaintiffs asserted, "This lawsuit is a collateral attack on a void judgment because it excluded indispensable parties, i.e. the plaintiffs." Plaintiffs contended, "If what [the Association] says is true, then in every case in which [a] plaintiff is seeking to collaterally attack a judgment, that collateral attack would be subject to a SLAPP motion. That is ridiculous." Plaintiffs contended their complaint did not concern a public issue and did not concern the Association's right to petition; rather, it concerned the Association unilaterally agreeing that homeowners' fees could be raised.

Plaintiffs contended they had a probability of succeeding on the merits because the bankruptcy court's judgment was open to collateral attack due to the bankruptcy court lacking jurisdiction or exceeding its jurisdiction. Plaintiffs argued res judicata did not apply because the bankruptcy court's judgment is void. Additionally, Plaintiffs disputed that they were in privity with the Association. Plaintiffs contended the Association's priority in the bankruptcy proceedings was receiving the payment for its

7

attorneys' fee award from the 2012 case.  In order to secure its payment, the Association "sold the owners of the individual properties down the road."

### 4. *HEARING ON THE ANTI-SLAPP MOTION*

The trial court held a hearing on the Association's anti-SLAPP motion.  The court asked Plaintiffs if their lawsuit arose out of a protected activity.  Plaintiffs responded, "It does.  But what we have here is . . . basically a motion to undo a judgment . . . ."  The trial court asked why Plaintiffs did not intervene in the bankruptcy case.  Plaintiffs explained the bankruptcy case was closed by the time they learned of it.

In regard to the probability of prevailing, the Association said, "And I would argue that because this settlement was approved in bankruptcy court, that they don't even have standing to object to it here in this court.  Their remedy would be to go to Judge Houle in bankruptcy court and argue before him."

Alternatively, the Association asserted that it had standing to represent the members of the Association in the Agreement, without naming the members or giving notice to the members.  Plaintiffs argued that the Association did not have standing to represent them because Tri-Palms Estates is not a common interest development in that there is no common property.  The Association contended common property is not a requirement for a common interest development, and that reciprocal easements are sufficient for a common interest development.  The Association contended there were easements for the homeowners to use the recreation facility.

8

5.    *ORDER*

The trial court granted the anti-SLAPP motion.  The trial court found that plaintiffs' complaint "obviously arises out of constitutionally protected activity.  The complaint specifically references the settlement agreement made in the bankruptcy proceedings and seeks to challenge it."

In regard to the probability of prevailing, the trial court explained that plaintiffs failed to address the reciprocal easement issue, i.e., that a common interest development can be based upon reciprocal easements.  The court found that plaintiffs' failure to address this issue meant that the Association had "the statutory authority to sue in its own name without joining all of its members (including plaintiffs) and the settlement agreement is not void for lack of naming plaintiffs as parties to the underlying litigation. [¶]  Because the Court finds that plaintiffs have not and cannot meet their burden under the second prong of the analysis, it need not address the additional contention by [the Association] that any challenge to the settlement agreement may only be made in the bankruptcy court."  The trial court awarded the Association attorneys' fees in the amount of $33,720.50 and costs in the amount of $1,505.77 for a total award of $35,225.77.

6.    *MOTION FOR RECONSIDERATION*

Plaintiffs filed a motion for reconsideration.  As to the first prong of the analysis, plaintiffs asserted a new case was published after the hearing on the anti-SLAPP motion, which required the trial court to consider the act underlying the cause of action.  Plaintiffs argued the act at issue in this case was the raising of the homeowners' fees; it

9

did not concern speech. Plaintiffs explained, "In our case, the cause of action is to set aside a void judgment, not to silence [the Association] in any way. It is also not a matter of public concern, it is dispute between some homeowners and a HOA."

As to the second prong, plaintiffs contended there were no reciprocal easements. Plaintiffs explained that homeowners have an easement to use the recreation facility, but the easement is not reciprocal because there is no right for the owner of the recreation facility to enter the homeowners' properties.

### 7. *HEARING ON THE MOTION FOR RECONSIDERATION*

The trial court held a hearing on plaintiffs' motion for reconsideration. The trial court said that plaintiffs' argument concerning the lack of reciprocal easements was not a new fact. Plaintiffs responded, "If the Court can look at that—again, there is just no easement—Your Honor, there is just no easements, there is nothing, there is no common property." Plaintiffs asserted that a reciprocal or mutual easement does not mean all the homeowners had access to the recreation facility, it meant the homeowners had access to the recreation facility and the owners of the recreation facility had access to the homeowners' properties. The trial court said it was not persuaded by plaintiffs' easement argument.

In regard to the first prong, plaintiffs asserted their lawsuit was about increased fees; it was not about petitioning activity. The trial court explained that plaintiffs framed their case as being about the Association's lack of standing to enter into the Agreement, which arose from litigation, and therefore, plaintiffs' case concerned petitioning activity. The trial court denied the motion for reconsideration.

10

**DISCUSSION**

I.      ANTI-SLAPP MOTION

     A.     *CONTENTION*

Cheveldave contends the trial court erred by granting the anti-SLAPP motion.[5] (§ 425.16.)

     B.     *LAW AND STANDARD OF REVIEW*

The anti-SLAPP statute is designed to "encourage continued participation in matters of public significance" by stopping lawsuits that would otherwise chill a person's public participation due to abuse of the judicial process. (§ 425.16, subd. (a).) There are two steps to determining if a lawsuit is designed to curb the defendant's participation in matters of public significance.

The first step is examining the causes of action to determine if they arise from any act in furtherance of the defendant's "right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." (§ 425.16, subd. (b).) The second step is determining whether the plaintiff has a probability of prevailing on his claims. (§ 425.16, subd. (b).) If a cause of action arises from an act in furtherance of the defendant's right of petition or free speech and the plaintiff does not have a probability of prevailing, then the cause of action will be stricken. (§ 425.16, subd. (b).) We apply the de novo standard of review. (*Park v. Board of Trustees of California State University System* (2017) 2 Cal.5th 1057, 1067.)

_____

[5] Davis requested the appeal be dismissed only as to him. This court granted Davis's request. Thus, Cheveldave is the sole appellant.

11

## C.    *PROTECTED ACTIVITY*

An " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes . . . any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body, or any other official proceeding authorized by law." (§ 425.16, subd. (e)(2).)

"In deciding whether the initial 'arising from' requirement is met, a court considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' (§ 425.16, subd. (b).)" (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.) " 'The mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute. . . . In the anti-SLAPP context, the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity.' " (*In re Episcopal Church Cases* (2009) 45 Cal.4th 467, 477.)

The act complained of in Cheveldave's complaint is the Association's entering into the Agreement, which resulted in increased fees for homeowners. Cheveldave asserts the Association did not have authority to agree to the fee increase, and he requests the fee increase be declared void and the Agreement be declared void as to the homeowners in the Tri-Palms Estate unit three development.

The fee increase clause of the Agreement provides, in relevant part, "Pursuant to the Fee Schedule attached hereto as Exhibit 2, and in order to resolve that Lawsuit, the Parties agree that K&S may charge increased Usage and Maintenance Fees for each Lot

12

Owner (as defined in the Declaration) within each Tract." The "Lawsuit" refers to the state trial court case for which a judgment was entered in 2012. At the time of the Agreement, an appeal and cross-appeal from the 2012 judgment were pending in this court. (*Tri Palms Unified Owners Association, Inc. et al. v. The Club at Shenandoah Springs Village, Inc.* (E056546) [dismissal order July 28, 2014].)

The Agreement further provides, "[The Association] shall file a Request for Dismissal with prejudice of its Cross-Appeal in its entirety as to all parties and claims with each Party bearing its own fees and costs within 15 business days after date of the Close of Escrow pursuant to the Purchase Agreement. [The Association's] obligation to file a Request for Dismissal with prejudice of its Cross-Appeal is contingent upon the dismissal, with prejudice, of the appeal filed by the Debtor."

The Agreement also provides, "[The Association] asserts certain claims against Debtor, and filed a proof of claim as a secured creditor in the Bankruptcy Action for the amount of $382,478.75 plus interest. . . . After a trial on June 8, 2012, a judgment was entered against Debtor in the amount of $365,648.88 plus interest and for a permanent injunction. Debtor then filed an appeal from the Judgment and [the Association] filed a cross appeal on July 31, 2012."

The Agreement continues, "K&S shall not object to [the Association's] secured claim of Three Hundred Eighty Two Thousand Four Hundred Seventy-Eight and 75/100ths Dollars ($382,478.75) plus interest, being deemed an allowed claim, which shall be paid from proceeds of the Sale Motion, and [the Association] covenants not to file another claim in the Debtor's bankruptcy case. [The Association] shall cooperate in

13

and support K&S's purchase of the Purchased Assets pursuant to the Purchase Agreement and Sale Motion."

In other words, the Association had a claim for $382,478.75 as a result of a judgment entered in the state trial court, and the Association hoped to have its claim paid within the bankruptcy proceedings. In connection with that $382,478.75 judgment, an appeal and cross-appeal were pending. Additionally, the Association had made a demand for arbitration against Shenandoah, in relation to the fee increase. In the Agreement, the Association agreed to (1) dismiss its cross-appeal, (2) dismiss its demand for arbitration, and (3) permit the fee increase, in exchange for (A) dismissal of Shenandoah's appeal, and (B) an agreement that the $382,478.75 judgment would be paid.

Thus, the Association's act of agreeing to the fee increase resulted in the dismissal of an appeal and cross-appeal that were pending before this court, and the resolution of the Association's creditor claim that was pending before the bankruptcy court. When the bankruptcy court issued its order, it wrote, "The Court approved K&S as the successful bidder at the hearing on the Motion in lieu of Inspire Communities, in part, based on K&S' agreement on the record in open court to the terms and conditions of the Inspire Settlement Agreement." Thus, the terms of the Agreement were part of the bankruptcy court's decision to select K&S as the successful bidder.

In sum, the Agreement led to the settlement of the Association's creditor claim in the bankruptcy court and the appeal and cross-appeal in the state appellate court. The

14

Agreement was also used by the bankruptcy court as a reason to select K&S as the successful bidder after the terms of the Agreement were discussed in open court.

Given that the Agreement affected a number of issues before the courts, the Agreement constitutes a "written . . . statement . . . made in connection with an issue under consideration or review by a . . . judicial body." (§ 425.16, subd. (e)(2).) Accordingly, the Association's act of entering into the Agreement is a protected activity.

Cheveldave contends the Association's act of entering into the fee increase portion of the Agreement is not a protected activity because the Association did not have authority to enter into that section of the Agreement. Cheveldave's argument pertains to the merits of the case, i.e., whether the Association had the authority to enter into the fee increase portion of the Agreement. Cheveldave does not cite to the anti-SLAPP statute and explain how an alleged lack of authority means the statement was not made in connection with an issue pending before a court. (§ 425.16, subd. (e)(2).) Accordingly, because Cheveldave's argument appears to pertain to the merits of his complaint, we find his contention to be unpersuasive.

D.     *PROBABILITY OF PREVAILING*

1.     Law

If a cause of action arises from the defendant's protected activity then the plaintiff must show he has a probability of prevailing on the claim. (§ 425.16, subd. (b)(1); *Navellier v. Sletten*, *supra*, 29 Cal.4th at p. 95.) The plaintiff must establish that his case has "minimal merit" by presenting a " ' "prima facie showing of [evidence] to

sustain a favorable judgment if the evidence submitted by the plaintiff is credited." ' "
(*Navellier*, at pp. 88-89, 93.)

### 2.    Davis-Stirling Act

When a development contains a common area, then the Davis-Stirling Act applies.  (Civ. Code, § 4201.)  The Davis-Stirling Act confers standing on a homeowners' association to pursue legal claims in its own name without joining the individual members.  (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 241; Civ. Code, § 5980.)  A "common area may consist of mutual or reciprocal easement rights appurtenant to the separate interests." (Civ. Code, § 4095, subd. (b).)  A reciprocal easement arises when adjoining landowners impose corresponding restrictions or rights upon each of their properties. (*Whelan v. Rosseter* (1905) 1 Cal.App. 701, 704; see also *Redevelopment Agency v. Tobriner* (1989) 215 Cal.App.3d 1087, 1091, fn. 1.)

An example of a reciprocal easement is a small condominium building with a common driveway.  Each condominium owner may grant a reciprocal easement to the other condominium owners that allows each owner to drive anywhere on the driveway and preventing any owner from erecting a barrier.  (See *Hill v. San Jose Family Housing Partners, LLC* (2011) 198 Cal.App.4th 764,775-776; see also *Howeth v. Coffelt* (2017) 18 Cal.App.5th 126, 129; see also *Baccouche v. Blakenship* (2007) 154 Cal.App.4th 1151, 1555; see also *Redevelopment Agency v. Tobriner*, *supra*, 153 Cal.App.3d at pp. 370-371; see also *Fobbs v. Smith* (1962) 202 Cal.App.2d 209, 211; see also Civ. Code, § 4505, subd. (a).)

16

The 2003 Master Declaration provides, "Every Member of the Association shall have a non-exclusive easement for use and enjoyment of the Recreational Facilities and any improvements thereon or open space areas therein, which shall be appurtenant to and pass with title to each Lot, subject to all of the easements, covenants, conditions, restrictions and other provisions contained in the Declarations and this Master Declaration."

The Master Declaration does not create a reciprocal easement because there is not a shared burden. The members' properties are not burdened by an easement—only the recreation facility is burdened by an easement. Based upon the current evidence, there is not a shared burden, and therefore, there are not reciprocal easements.

A mutual easement has the same meaning as a reciprocal easement: "[A] general plan of real estate development can give rise to mutual equitable servitudes only when both the grantor and grantee intend that the land conveyed is to be restricted pursuant to a general plan, that intent appears in the deed, the parties' agreement shows that the parcel conveyed is subject to restrictions in accordance with the plan for the benefit of all the other parcels in the subdivision and such other parcels are subject to like restriction for its benefit." (*Terry v. Jones* (1977) 72 Cal.App.3d 438, 442.) Thus, mutual easements are defined by a "mutuality of obligation." (*Welsch v. Goswick* (1982) 130 Cal.App.3d 398, 405.)

As explained *ante*, there is not a mutuality of obligation. Rather, there is a single obligation. The recreation facility, alone, bears the burden of an easement. The homeowners' properties do not have the burden of a mutual obligation. As a result,

based upon the current evidence, there is not a mutual easement. Because the evidence reflects there is not a reciprocal easement or a mutual easement, Chevldave has established minimal merit regarding his allegation that there is not a common area, and thus that there is not standing pursuant to the Davis-Stirling Act.

The Association contends the unit three declaration created easements on homeowners' lots for the installation and maintenance of drainage facilities, and thus, there is a common area. The "Declaration of Restrictions and Charges for Tri-Palm Estates Unit Three" provides that Mobilife of California, Inc. created easements on the homeowners' lots. Specifically, the unit three declaration provides, "Easements for the installation and maintenance of utilities and drainage facilities are reserved, as shown on the recorded map or plat, over the rear and side of each lot and parcel of land. Within these easement areas, no structure, planting or other material shall be placed or permitted to remain which may damage or interfere with the installation and maintenance of utilities. The easement areas of each lot and parcel of land, and all improvement in it, shall be maintained continuously by the owner of said lot and parcel of land."

The foregoing easement is not mutual or reciprocal because the easement runs in only one direction—the burden is only on the homeowner. There is not a shared burden. The utility companies have not granted an easement to the homeowners, such that the utility companies are burdened. Accordingly, because the easements are not reciprocal or mutual, we are not persuaded that the easements create a common area.

18

The Association contends it owns an office, and the office constitutes a common area. In support of this contention, the Association cites to Cheveldave's attorney's argument in the opposition to the anti-SLAPP motion. Because the Association (1) does not provide evidence of its ownership of the office; and (2) does not provide an explanation as to how owning the office constitutes a common area for homeowners, we find the Association's contention to be unpersuasive. (*Central Valley Gas Storage LLC v. Southam* (2017) 11 Cal.App.5th 686, 694-695 [provide relevant analysis].)

### 3. Master Declaration

The Association contends that if, under the current evidence, the Davis-Stirling Act could be found to be inapplicable, then the Association had standing to authorize the fee increase pursuant to the recorded 2003 Master Declaration.

The Master Declaration provides, "The Association may do all other acts and things that nonprofit mutual benefit corporations are empowered to do, which may be necessary, convenient or desirable in the administration of its affairs and in order to carry out the powers and duties described in this Master Declaration, including those powers described in Section 374 of the California Code of Civil Procedure and (to the extent not inconsistent herewith) those powers described in Section 1350 et seq. of [the] California Civil Code, as those sections may be amended from time to time."

The Master Declaration was executed in 2003. In 2003, section 374 provided that a minor under 12 years of age, accompanied by a guardian ad litem, "shall be permitted to appear in court without counsel for the limited purpose of requesting or opposing a request for" a protective order or an injunction to stop harassment or

19

violence. The fee increase did not arise from a case involving a protective order or injunction related to harassment or violence. Accordingly, we do not rely upon section 374.

In 2003, Civil Code section 1350 et seq. was the Davis-Stirling Act. (Former Civ. Code, § 1350.) The Master Declaration provides, "The Association may do all other acts and things that nonprofit mutual benefit corporations are empowered to do . . . including . . . (to the extent not inconsistent herewith) those powers described in Section 1350 et seq. of [the] California Civil Code, as those sections may be amended from time to time."

As explained *ante*, the Davis-Stirling Act applies when there is a common area. (Civ. Code, § 4201.) The law specifically provides that the Davis-Stirling Act does not "apply to a real property development that does not contain [a] common area." (Civ. Code, § 4201.) Arguably, it would be inconsistent to apply the Davis-Stirling Act to the Association because there is evidence reflecting Tri-Palms Estates does not have a common area. Because it is arguably inconsistent, one could reasonably argue that, under the Master Declaration, the authority granted by the Davis-Stirling Act does not apply in this case. The argument would be as follows: the Master Declaration allows the authority of the Davis-Stirling Act to be exercised by the Association "to the extent not inconsistent herewith," but it is inconsistent in this case because there is no common area, and thus, no authority may be exercised under the Davis-Stirling Act. Because such an argument can reasonably be made, we conclude there is minimal merit to Cheveldave's case.

20

### 4. Proper Fees

The Association contends that even if it lacked authority to agree to the fee increase, the increase itself was proper. In other words, the Association's lack of authority is harmless in that K&S could have increased the fees in the same manner, without any agreement by the Association, because there is no error in K&S's fee calculation.

It may be that the result of Cheveldave's lawsuit is that the Agreement is declared void and then nothing of substance changes because the fee increase was properly calculated and could have been unilaterally imposed by K&S. If it is declared that the Association did not have the authority to enter into the Agreement, then that declaration could affect similar issues in the future between the Association and the homeowners. This lawsuit may ultimately be more about procedure, than a decrease in fees, but it could clarify the rights between the Association and the homeowners. Therefore, there is minimal merit to Cheveldave's case.

### 5. Deference

The Association contends Cheveldave's case does not have minimal merit because deference is given to decisions made by the governing board of a community association. The Association relies upon the following quote: " 'Generally, courts will uphold decisions made by the governing board of an owners association so long as they represent good faith efforts to further the purposes of the common interest development, are consistent with the development's governing documents, and comply with public

policy.' " (*Lamden v. La Jolla Shores Clubdominium Homeowners Assn.* (1999) 21 Cal.4th 249, 264.)

If Cheveldave's complaint concerned the merits of the fee increase, then the foregoing rule might be applicable. However, Cheveldave is disputing the Association's authority to enter into the Agreement. The quote that the Association relies upon is not relevant to determining whether the Association had the authority to enter into the Agreement; rather, it would be relevant if we were examining if it were a good decision to enter into the fee increase portion of the Agreement. Accordingly, we find the Association's argument to be unpersuasive.

### 6. Collateral Estoppel

#### a. *Law*

"The doctrine of collateral estoppel is one aspect of the concept of res judicata." (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341, fn. 3.) "Collateral estoppel, or issue preclusion, 'precludes relitigation of issues argued and decided in prior proceedings.' " (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896.)

Collateral estoppel has five requirements: "First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding."

(*Lucido v. Superior Court*, *supra*, 51 Cal.3d at p. 341.) We apply the de novo standard of review. (*Johnson v. GlaxoSmithKline, Inc.* (2008) 166 Cal.App.4th 1497, 1507.)

b.       *Bankruptcy Court*

The Association contends the bankruptcy court's order was final and on the merits, and therefore Cheveldave's case is barred by collateral estoppel. The issue before the bankruptcy court was Shenandoah's debts. There is nothing in the record indicating that the bankruptcy court decided whether the Association had the authority to agree to a fee increase. Because the issue raised in Cheveldave's case is not identical to the issue raised in the bankruptcy court, collateral estoppel does not apply.

c.       *The Agreement*

The Association contends the Agreement is a final decision on the merits and therefore Cheveldave's case is barred by collateral estoppel. The Association relies upon *Citizens for Open Access to Sand and Tide, Inc. v. Seadrift Assn.* (1998) 60 Cal.App.4th 1053, 1065, which provides, "The settlement agreement, as incorporated into the judgments in the Kelly and federal court actions, meets the first requirement of res judicata that there was a final decision on the merits."

The bankruptcy court did not incorporate the Agreement into its order. In its order, the bankruptcy court wrote, "The Court approved K&S as the successful bidder at the hearing on the Motion in lieu of Inspire Communities, in part, based on K&S' agreement on the record in open court to the terms and conditions of the Inspire Settlement Agreement." The Agreement was a reason for the bankruptcy court selecting K&S as the successful bidder, but the court did not order K&S to comply with

23

the terms of the Agreement. Because the terms of the Agreement are not part of the bankruptcy court's order, the Agreement does not constitute a final decision on the merits. Therefore, Cheveldave's case is not barred by collateral estoppel.

### d. *Small Claims*

The Association contends that Davis, who is no longer a party to this appeal, is barred by collateral estoppel from pursuing this case because he previously litigated the same issues in small claims court. Because Davis is no longer a party to this appeal, we deem this issue to be moot. (*Schoshinski v. City of Los Angeles* (2017) 9 Cal.App.5th 780, 791 [an issue is moot when the court cannot provide further relief].)

### E. *CONCLUSION*

Cheveldave has established that his case has minimal merit. Accordingly, the trial court erred by granting the anti-SLAPP motion.

### II. ATTORNEYS' FEES

The Association contends it should be awarded attorneys' fees on appeal if this court affirms the trial court's order. We deny the Association's request because we are reversing the trial court's order. Further, because the Association is not the prevailing party on the anti-SLAPP motion, the trial court's award of attorneys' fees must be reversed. (§ 425.16, subd. (c)(1).)

We note that Cheveldave's notice of appeal did not expressly include the award of attorneys' fees. In the trial court's May 18 order granting the anti-SLAPP motion, the trial court explained that the Association was the prevailing party and cited to the subdivision mandating an award of attorneys' fees (§ 425.16, subd. (c)). The exact

24

amount of attorneys' fees was awarded on May 26. Cheveldave's notice of appeal reflects he is appealing from the May 18 order and the July 11 denial of his motion for reconsideration. Because the trial court's May 18 anti-SLAPP order included a citation to the law for a mandatory award of attorneys' fees, and Cheveldave is appealing from the May 18 order, we conclude the issue is within our jurisdiction. (*Grant v. List & Lathrop* (1992) 2 Cal.App.4th 993, 997; *Chodos v. Cole* (2012) 210 Cal.App.4th 692, 697-698, 706.)

### III. MOTION TO DISMISS

The Association filed a motion to dismiss Cheveldave's appeal due to Cheveldave no longer residing within Tri Palms Estates. The Association explains that Cheveldave's home was foreclosed upon, and in March 2018 ownership of Cheveldave's home was transferred to the Association. The Association was listed as the creditor in the foreclosure.[6] The Association asserts that because Cheveldave is no longer a homeowner within Tri Palms Estates, he lacks standing to pursue the instant appeal.

"Any party aggrieved may appeal." (§ 902.) "[A] prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs." (§ 425.16, subd. (c)(1).)

---

[6] The Association requests this court take judicial notice of the "Sheriff's Deed County of Riverside, State of California Under Writ of Execution," that was recorded by the Riverside County Clerk-Recorder, against Cheveldave's property. This court grants the request as required by law. (Evid. Code, §§ 452, subd. (c), 453; *Evans v. California Trailer Court, Inc.* (1994) 28 Cal.App.4th 540, 549.)

Because the Association was the prevailing party on the anti-SLAPP motion, the trial court awarded the Association attorneys' fees in the amount of $33,720.50 and costs in the amount of $1,505.77, for a total award of $35,225.77.[7]  Because Cheveldave was required to pay an award of $35,225.77, he was aggrieved.  Because attorneys' fees are required for a prevailing defendant on anti-SLAPP motion, the only means of addressing the attorneys' fee award on appeal was to argue that the trial court erred in granting the anti-SLAPP motion.  Accordingly, because Cheveldave was aggrieved by the trial court's order, he could properly appeal.  (§ 902.)  Therefore, we deny the Association's motion to dismiss.

## DISPOSITION

The judgment of dismissal is reversed.  The orders granting the anti-SLAPP motion and awarding attorney's fees are reversed.  Cheveldave is awarded his costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1).)

CERTIFIED FOR PUBLICATION

MILLER
J.

We concur:

McKINSTER
Acting P. J.

CODRINGTON
J.

---

[7] The trial court calculated the total award as $35,225.77.  However, it appears the total amount should be $35,226.27.

26