Filed 11/18/20  Perez v. Blay CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| MAX PEREZ,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>RICHARD J. BLAY et al.,<br><br>    Defendant and Respondent. | D075751<br><br>(Super. Ct. No. 37-2017-00023570-CU-FR-NC) |

APPEAL from a judgment of the Superior Court of San Diego County, Jacqueline M. Stern, Judge.  Affirmed.

Griffin Law Firm and David Ryan Griffin for Plaintiff and Appellant.

Gordon Rees Scully Mansukhani, Matthew Gregory Kleiner and Andrea K. Scripps for Defendants and Respondents.

Appellant Max Perez bought a parcel of land and then sought to rescind the purchase.  He challenges the trial court's denial of his request and, in particular, its finding that the lot was not part of a common interest development.  Finding no error based on the incomplete record before us, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In 2015, Perez bought a parcel of land in Bonsall from Richard and Ann Whalen Blay.[1] It was one of eight lots they inherited from Richard's mother. The Blays never lived on the land but knew all parcels were subject to various covenants and restrictions (CC&R's) which were referenced in the property listing.

Perez was apparently eager to close the sale. He submitted an offer, accepted the Blay's counteroffer, and completed the purchase in less than a month. At some point Perez seemingly discovered that the CC&R's would inhibit his construction plans on the lot. He filed suit against the Blays and other codefendants involved in the sale (parties who were later dismissed), seeking rescission based on fraud, negligent misrepresentation, and breach of contract. Perez alleged that the Blays misrepresented that there was no owner's association and that the CC&R's were invalid, inducing him to purchase the lot in reliance on these false statements. For his breach of contract claim, Perez said the Blays did not disclose certain documents they were contractually mandated to provide.

The case proceeded to a bench trial, where the court found in favor of the Blays and specifically stated that Perez failed to carry his burden, offering "no evidence against these defendants of fraudulent acts or misrepresentations" and "no evidence that they failed to provide any required documentation to plaintiff." The trial was not reported.

---

[1] The record in this case is incomplete. We gather the facts from undisputed statements in the briefs, the trial court's statement of decision, and the handful of exhibits available to us.

2

DISCUSSION

On appeal, Perez argues the court erred as a matter of law by concluding that the CC&R's, a map of the property subdivision, and a private road maintenance agreement did not create a common interest development under the Davis-Stirling Common Interest Development Act (the Act).[2] (Civ. Code, § 4000 et seq.)[3] Despite the trial court's factual findings to the contrary, he also reiterates his position that he is entitled to rescission because the Blays breached their contractual obligations by failing to provide disclosures regarding a homeowner's association. Alternatively, he claims that the documents they did provide came late and prevented him from making an informed decision about the purchase.

As to his first argument, it is not at all clear that Perez would have fared better if the trial court had made the opposite finding—that these documents proved the lot *was* part of a common interest development. Regardless, there was no demonstrable error on this point. We provide a brief overview of the statutory scheme to frame our discussion.

In 1985, the Act gathered the various codes governing common interest developments within one statutory framework. Because subsequent amendments rendered the sections confusing, it was overhauled and recodified in 2014. (*Nahrstedt v. Lakeside Village Condominium Assn.* (1994) 8 Cal.4th 361, 378; Sproul et al., Advising Cal. Common Interest Communities (Cont.Ed.Bar. 2d. ed. 2020) §§ 1.3–1.4.) The Act recognizes four types of common interest communities: community apartments,

---

[2] Our record only includes the CC&R's and map of the property subdivision.

[3] All subsequent statutory references are to the Civil Code unless otherwise indicated.

3

condominiums, planned developments, and stock cooperatives. (§ 4100.) The lots at issue in this case could only be considered part of a planned development, which is defined as a real property development other than an apartment, condominium, or stock cooperative. (§ 4175.) Generally, a common interest development is created through a two-step process: (1) "a separate interest, coupled with an interest in the common area or membership in the association" is conveyed, and (2) a declaration and parcel map that complies with the Subdivision Map Act are both recorded.[4] (Civ. Code, § 4200; Gov. Code, § 66410.) In planned developments, a separate interest is defined as a "separately owned lot, parcel, area, or space" (§ 4185, subd. (a)(3)), while the common area is negatively defined as "the entire common interest development except the separate interests therein." (§ 4095, subd. (a).) Properties that lack a common area are not common interest developments and the Act is inapplicable to their governance. (§ 4201; see also *Committee to Save the Beverly Highlands Homes Ass'n v. Beverly Highlands Homes Ass'n* (2001) 92 Cal.App.4th 1247, 1268.)

The question before us is whether, as a matter of law, the three documents Perez points to necessarily show the parcel he currently (though unhappily) owns is part of a planned development. Because the eight lots clearly qualify as separate interests, our analysis turns on whether the property includes a "common area" as defined by the statute.

In planned developments, a common area can be established in one of two ways. Under subdivision (a) of section 4175, the common area can be either owned by an association or owned in common by the owners of the separate interests who "possess appurtenant rights to the beneficial use and

---

4    Though not relevant here, condominiums are also required to record a condominium plan.

4

enjoyment of the common area." Subdivision (b) provides an alternative, where the common area is maintained by an association "with the power to levy assessments that may become a lien upon the separate interests."

These common areas typically consist of green space or recreation areas. (See, e.g., *Branciforte Heights, LLC v. City of Santa Cruz* (2006) 138 Cal.App.4th 914, 921; Bruce et al., Forming Cal. Common Interest Developments (Cont.Ed.Bar. 2019) § 1.35.) Construing his brief liberally, Perez seems to argue that the two private roads bordering the property, Disney Lane and Kellyn Lane, *are* the common area. While it is certainly possible for private roads to satisfy this requirement, their existence alone is not enough. Perez must show the roads constitute a common area under section 4175, which lists the factors that qualify.

Subdivision (a) of section 4175 focuses on ownership of the common area and contemplates that either an association will own it or that the separate interest owners will hold it in common. As to the first ownership structure, there are no indications in either the CC&R's or the map that an association owns the roads. To the contrary, the map shows that most of the parcels (numbers two through eight) extend to incorporate parts of Disney Lane. It thus appears that sections of the road are actually within the separate interest lots. By its very definition, a common area cannot be part of a separately owned interest. A map like this, that shows sections of road incorporated into distinct lots, seems to preclude the possibility that the separate interest owners hold the roads together, undivided, as tenants in common. (See, e.g., *Pinnacle Museum Tower Assn. v. Pinnacle Market Development* (*US*), *LLC* (2012) 55 Cal.4th 223, 232 [condominium common area was an undivided interest held in common]; Bruce et al., Forming Cal. Common Interest Developments, *supra*, § 1.35 [noting the two ownership

5

structures for common areas in planned developments are ownership by an association or by separate interest owners as tenants in common].) To further understand the ownership structure of the roads and the lots, we would need to review the deeds, which were not provided in this record.

Subdivision (b) does not focus on common area ownership but does require that an association exist to maintain the roads. Such an association must also possess the power to levy assessments that may become liens on the separate interests. (§ 4175.) Neither the map nor the CC&R's establish there was ever an association tasked with road maintenance.[5] In addition, the CC&R's only contemplated one association—the Architectural Control Committee—for approving construction plans on the lots. The lack of any other entity established in the CC&R's, coupled with the trial court's finding that the Architectural committee was defunct as of 2010, undermines Perez's position.

He advances one other theory that he maintains would make the roads a common area, but it stems from a misunderstanding of the statutory scheme.[6] The Act's definition in some cases permits a common area to "consist of mutual or reciprocal easement rights."[7] (§ 4095, subd. (b).) Seizing on this language, Perez points out that the lots have mutual

---

[5] While our record does not include the road maintenance agreement, a reference to that document in the CC&R's indicates it established a formula for owner contributions to street repair and maintenance. This reference makes no mention of an association.

[6] In all fairness, the sections at issue employ some potentially confusing language. (See Bruce et al., Forming Cal. Common Interest Developments, *supra*, §§ 1.35–1.37, for clarification.)

[7] "A mutual easement has the same meaning as a reciprocal easement." (*Cheveldave v. Tri Palms Unified Owners Assn.* (2018) 27 Cal.App.5th 1202, 1215.)

6

easement rights to traverse Disney and Kellyn lanes. He seems to believe the mere existence of the easements satisfies the common area requirement. But by the terms of the statute, easement rights can only be considered a common area where an association also exists. Moreover, the association must have the particular powers and responsibilities enumerated in section 4175, subdivision (b) as discussed above. (See § 4095, subd. (b).) Perez, who has failed to provide evidence of these specific conditions, cannot rely on this part of the law to support his argument.

Perez's remaining claims amount to nothing more than attempts to relitigate unfavorable findings made by the trial court. We usually afford these findings great deference, overturning them only if they are unsupported by substantial evidence. (See *Scott v. Pacific Gas & Electric Co.* (1995) 11 Cal.4th 454, 465; *Escobar v. Flores* (2010) 183 Cal.App.4th 737, 752.) Here, we assume their propriety since we have no record of the trial to review and only a partial clerk's transcript. (See *Estate of Fain* (1999) 75 Cal.App.4th 973, 992; *National Secretarial Service, Inc. v. Froehlich* (1989) 210 Cal.App.3d 510, 522.)

We do have the court's statement of decision. Of particular relevance, the court memorialized Perez's failure to carry his burden. Specifically, it stated that he presented "no evidence against these defendants of fraudulent acts or misrepresentations" and "no evidence defendants failed to provide any required documentation." He was also given the CC&R's, map, and road maintenance agreement to inform his property purchase and he "signed off on the preliminary title report several days before the close of escrow," completing the transaction without objection or even a request for additional time. Perez's continued insistence that rescission is warranted, either due to a mistake or because the Blays withheld documents they were required to

7

provide, is contradicted by the findings of the trial court—to which this court must defer.

## DISPOSITION

The judgment is affirmed.  Respondents are entitled to their costs on appeal.


                                                                    DATO, J.

WE CONCUR:


O'ROURKE, Acting P. J.


AARON, J.