Filed 7/3/24  Detamore v. Jain CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| JASON A. DETAMORE et al., | B319504 |
| Plaintiffs and Appellants, | |
| v. | (Los Angeles County Super. Ct. No. 18SMCV00120) |
| SURESH C. JAIN et al. | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, Mark A. Young, Judge.  Affirmed.

Fisher, Klein & Wolfe, David R. Fisher, Tom N. Yacko; Jason A. Detamore and Lisa M. Detamore, in prop. per., for Plaintiffs and Appellants.

One LLP, Peter R. Afrasiabi; Law Office of Kathryn M. Davis, Kathryn M. Davis for Defendants and Respondents.

_____

In prior litigation among some dozen parties operating cannabis dispensaries, the parties entered into a settlement agreement wherein most of them agreed to go their separate ways and operate separate dispensaries.

On one side stood Jason and Lisa Detamore, the owners and principals of Advanced Pain Solutions, Inc., a cannabis dispensary business (collectively Detamore) operated at 12320 W. Pico Boulevard in Los Angeles (12320 Pico).

On another side stood Devon Wheeler, the Detamore's partner, who leased 12320 Pico from parties on yet a third side of the dispute, Suresh C. Jain, the Suresh & Usha Jain Living Trust 2003, and Pico 12300, LLC. (Jain, the trust, and the LLC are collectively "Jain.")

In simplified terms, the settlement agreement obligated Wheeler to cede his interest in Advanced Pain Solutions to Detamore and transfer any partnership assets he still possessed. Detamore understood it would continue operating a dispensary at 12320 Pico, without Wheeler.

Upending Detamore's expectation, Jain evicted Wheeler, whose name was still on the lease, effectively evicting the dispensary and Detamore. Jain then immediately re-let the premises to Wheeler, who opened his own, competing dispensary.

Detamore sued Jain for conspiracy to fraudulently induce the settlement agreement, arguing Jain and Wheeler colluded to oust Detamore from 12320 Pico.

Jain moved to strike the conspiracy cause of action as a strategic lawsuit against public participation (SLAPP), arguing its affirmative defenses rendered Detamore unlikely to prevail.

The court granted the motion on a different ground: Detamore could not likely prevail because nothing in the settlement agreement, to which Jain was not a party, conveyed

2

any leasehold rights to Detamore.  Therefore, Jain did nothing wrong in evicting Detamore.

We conclude Detamore failed to establish a reasonable likelihood of prevailing because it offered no evidence suggesting that Jain and the settling parties colluded to induce Detamore to enter into the settlement agreement.  Therefore, we affirm the order granting defendants' anti-SLAPP motion.

## BACKGROUND

We take the facts from the third amended complaint.

**A.    Underlying Partnerships, Litigation, and Settlement**

**1.    Partnerships**

Detamore operated "Grace Medical," a cannabis dispensary, at 12320 Pico.

Wheeler partnered with Detamore to operate the dispensary.

Wheeler (not Detamore) leased 12320 Pico from Jain, its owner.

The lease between Jain and Wheeler provided that Wheeler could not "assign [or] transfer" 12320 Pico without Jain's prior written consent.  Despite never giving this consent, Jain accepted rent from Detamore, a nonparty to the lease.

Lawrence Epstein owned Marina Caregivers, Inc., which supplied cannabis products to dispensaries.  (Epstein and Marina Caregivers are collectively referred to as the Supplier Defendants.)

In 2013, Detamore, Wheeler, and Epstein formed a partnership to operate Marina Caregivers.

Also in 2013, Advanced Pain Solutions entered into a joint venture agreement with Herbalcure Corp. to operate a medical

3

marijuana retail dispensary in Los Angeles.[1]  Herbalcure is not directly relevant to this appeal but as will be seen, the joint venture agreement between Advanced Pain Solutions and Herbalcure is relevant.

Neither the agreement between Advanced Pain Solutions and Wheeler nor the one between Advanced Pain Solutions and Herbalcure obligated any party to contribute an interest in real property to the venture, including any existing leasehold.

### 2. Litigation and Settlement
#### a. Litigation

In June 2016, Detamore sued Wheeler and Jain for breach of the partnership agreement between Detamore and Wheeler concerning operation of Grace Medical at 12320 Pico (the Grace action).

In August 2016, Detamore sued Wheeler and the Supplier Defendants regarding the operation of Marina Caregivers (the Marina action).  (Detamore named other defendants as well, but they settled and are not part of this appeal.)

#### b. Settlement

In September 2016, Wheeler and the Supplier Defendants settled Detamore's claims against them in both the Grace and Marina actions.

Pursuant to the settlement agreement, Detamore ceded outside business interests to Wheeler, who disclaimed any right to Grace Medical, which continued to operate at 12320 Pico.

---

[1] An arbitrator ultimately found the Advanced Pain Solutions/Herbalcure joint venture agreement to be invalid. (*Herbalcure Corp. et al. v. Detamore* (May 18, 2020, B290873, B291497) [nonpub. opn.].)

4

Wheeler agreed to transfer all partnership assets to Detamore, specifically: (1) Wheeler's interest in Advanced Pain Solutions; (2) his interest in the Advanced Pain Solutions/ Herbalcure joint venture; (3) his right to operate Grace Medical; and (4) any assets Detamore "may be entitled to" under either of the partnership agreements, i.e., the agreement between Advanced Pain Solutions and Wheeler or that between Advanced Pain Solutions and Herbalcure.

In return, Detamore agreed to dismiss the Marina action altogether and to dismiss Wheeler from the Grace action.

The settlement agreement also provided that Detamore would indemnify Wheeler, whose name was still on the 12320 Pico lease (with Jain as the landlord), for all rents and liabilities arising from Detamore's operation of Grace Medical on the premises.

The settlement agreement contained no mention of an obligation to transfer the lease, nor any express mention of Wheeler ceding possession of 12320 Pico to Detamore, although the parties agreed Detamore would operate Grace Medical there.

Detamore thereafter dismissed the Marina action and dismissed Wheeler from the Grace action, leaving Jain as the last defendant standing in the Grace action.

Jain was not a party to the settlement agreement.

## B. Grace Medical's Eviction and Wheeler's Reinstallment at 12320 Pico

According to Detamore's third amended complaint, Wheeler had no intention of fulfilling his obligations.

Detamore alleged that on September 20, 2016, Jain and the Supplier Defendants conspired with Wheeler to fraudulently enter into the 2016 settlement agreement, planning that Wheeler would renege on his promise to allow Detamore to operate Grace Medical at 12320 Pico.

To further this conspiracy, after the Marina litigation settled and the Grace litigation partially settled, Jain, in collusion with Wheeler, filed a sham unlawful detainer action against Wheeler, alleging Detamore was illegally operating a dispensary at 12320 Pico without a license. Wheeler immediately capitulated in that action and signed a stipulated judgment.

To forestall eviction, on November 16, 2016, Detamore filed a prejudgment claim for possession of 12320 Pico and sought ex parte relief, alleging a rental agreement existed between Detamore and the landlord. Contending Wheeler and Jain conspired to wrongfully deprive Detamore of its interest in the lease and the subject premises and oust it from the dispensary business it had operated since 2009, Detamore challenged the stipulated judgment on grounds that Detamore, not Wheeler, was the tenant-in-possession and was thus the only entity having standing to stipulate to any unlawful detainer judgment.

The trial court denied Detamore's possession claim, entered judgment for Jain, and issued a writ of possession. Detamore did not appeal this ruling.

On January 8, 2017, Jain evicted Wheeler (and thus Grace Medical and Detamore) from 12320 Pico. The next day, Jain re-let the premises to Wheeler (through his half brother, Gabriel Dezio), and Wheeler opened a new dispensary, ERBA.

## C. Instant Litigation

### 1. Complaint

Detamore sued Jain and the Supplier Defendants for interference with prospective economic relations and conspiracy to commit fraud in the inducement of the 2016 settlement agreement that resolved the Marina action and partially resolved the Grace action. After extensive law and motion practice, including an appeal, the third amended complaint is operative.

6

In it, Detamore alleged that defendants and Wheeler formed a conspiracy before the 2016 settlement in furtherance of which Wheeler would perform none of his settlement obligations but nevertheless reap the settlement benefits.

Detamore alleged:

1. "As memorialized in the Settlement Agreement, all parties agreed that the Detamores would own and operate the cannabis business at the location of Grace Medical, the original dispensary, located at 12320 Pico Blvd., to the exclusion of Wheeler."

2. "Prior to the execution of the Settlement Agreement, Defendants and Wheeler agreed not to perform under the Settlement Agreement."

3. "Defendants and Wheeler intended to induce Plaintiffs into the Settlement Agreement by the misrepresentations made therein with respect to their intention to perform."

4. "After the Settlement was executed, Wheeler failed to perform his obligations under the Settlement Agreement[,] as Defendants intended, and moved back into 12320 Pico Blvd.[,] where he operated the Illegal Dispensary [ERBA], servicing Plaintiffs' customers, notwithstanding the contrary commitments of the parties in the Settlement Agreement."

5. "In furtherance of Wheeler's breach of the Settlement Agreement, Defendants gave substantial assistance to Wheeler to take over Plaintiffs' business including, but not limited to, the following:  1) the Defendant Landlords overlooked Wheeler's lack of license, and they re-let the property to Wheeler through his brother, notwithstanding their duties to Plaintiffs; and 2) the Defendant Suppliers also assisted Wheeler by restocking the location of ERBA, the Illegal Dispensary, notwithstanding their obligations to Plaintiffs at that location."

7

In sum, Detamore alleged defendants and Wheeler intended to induce Detamore to enter into the settlement agreement by misrepresenting Wheeler's intention to "relinquish[] all rights to operate the marijuana dispensary" at 12320 Pico, and defendants wrongfully interfered with Detamore's contractual rights by permitting Wheeler to resume occupation and operate a dispensary at the premises under Dezio's name.

### 2. Anti-SLAPP Motion

Jain and the Supplier Defendants specifically moved to strike the eighth cause of action: conspiracy to commit fraud in inducement of the 2016 settlement agreement, arguing the agreement constituted a "written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law," and the cause of action thus arose from acts in furtherance of Jain's petition rights. (Code Civ. Proc., § 425.16, subd. (e)(1).)[2] Defendants argued Detamore could not prevail on the cause of action because the action was barred by the litigation privilege and the applicable limitations period, and Detamore could not establish reasonable reliance.

In opposition to the motion, Detamore made three arguments. First, Detamore argued defendants failed to show its alleged actions arose from protected activity because they failed to provide any evidence Jain was involved in the 2016 settlement agreement or, as a nonparty thereto, could have engaged in protected activity. Detamore argued that the Supplier Defendants engaged in non protected activity because they were

---

[2] Undesignated statutory references will be to the Code of Civil Procedure.

8

mere signatories to the agreement, with no obligations thereunder.

Second, Detamore argued it would likely prevail on the merits because its cause of action for conspiracy to defraud was adequately pleaded.

Finally, Detamore argued it would likely prevail on the merits because the settlement agreement obligated Wheeler to cede occupancy of 12320 Pico to Detamore.

Detamore supported its arguments with the settlement agreement, Jason Detamore's declaration interpreting the agreement, and the stipulated unlawful detainer judgment against Wheeler.

In a tentative ruling, the trial court found that Detamore's eighth cause of action for conspiracy for fraud in the inducement sought to impose liability on Jain and the Supplier Defendants for protected conduct, specifically a misrepresentation intended to induce a litigation settlement.

However, the court found in its tentative ruling that Detamore failed to adduce any evidence that Jain knew of the settlement agreement, induced Wheeler to breach the agreement, or made any misrepresentation to Detamore. The court found that Detamore failed to establish even that Wheeler agreed to cede occupancy of 12320 Pico to Detamore. The court said, "[T]here seems to be a disconnect between what Plaintiffs believed was owed to them under the terms of the settlement agreement and what the settlement agreement actually states. . . . The Court does not find any terms in the agreement giving Plaintiffs physical possession of the property. . . . [¶] . . . [Settlement] language does not appear to require Defendant Wheeler to do anything or to transfer the property to Plaintiffs. Moreover, Plaintiffs have not argued that . . . Wheeler's lease was to be transferred to Plaintiffs."

On January 27, 2022, after a hearing on the motion, the court found that Detamore failed to show its claim had probable merit. The court adopted its tentative ruling and granted defendants' anti-SLAPP motion.

### 3. Motion for Reconsideration

Detamore moved for reconsideration under section 1008. On March 11, 2022, Detamore sought ex parte relief advancing the hearing on its reconsideration motion, which the court denied.

On March 16, 2022, Detamore appealed the denial of its ex parte application. It ultimately withdrew the reconsideration motion altogether.

### 4. New Trial Motion

On February 28, 2022, 32 days after the anti-SLAPP order was entered and served, Detamore moved for "new trial" on the grounds of improper notice, discovery of new evidence, and insufficiency of evidence supporting the judgment. It argued it lacked notice that the court would examine whether the settlement agreement required transferring possession of 12320 Pico. In support of the motion, Detamore offered a pre-settlement declaration by Wheeler in other litigation between the parties stating that the 12320 Pico lease was "the lease pursuant to which the Joint Venture continues to operate."

The court held a hearing on Detamore's new trial motion on April 20, 2022, 83 days after the anti-SLAPP order was entered and 45 days after Detamore had appealed the court's denial of its ex parte application to advance its section 1008 motion.

The court found no surprise existed because to prove the likelihood of success Detamore always had the burden of proving up its prima facie case, which required evidence supporting its right to possess 12320 Pico. It had every opportunity to do so, the

10

court found, but failed to do so until after the hearing. Therefore, the court denied Detamore's motion for new trial.

Detamore appeals.

## **DISCUSSION**

Detamore contends the trial court erred in (1) finding defendants' conspiracy arose from protected activity, (2) finding Detamore failed to establish a probability of prevailing on the merits, and (3) denying Detamore's motion for a new trial. We disagree.

## A. Applicable Law

### 1. Anti-SLAPP Procedure

The "anti-SLAPP statute is designed to protect defendants from meritless lawsuits that might chill the exercise of their rights to speak and petition on matters of public concern." (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 883-884.) Thus, a "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

In evaluating an anti-SLAPP motion, courts conduct a two-step analysis. First, the court decides whether a defendant has met its "burden of establishing that the challenged allegations or claims 'aris[e] from' protected activity in which the defendant has engaged." (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061 (*Park*).) For these purposes, protected activity "includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by

11

law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

Second, if a defendant meets its burden on the threshold showing, the court decides if the plaintiff "has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) To satisfy this burden, the plaintiff " 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' " (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 291.) At this stage of the proceedings, a plaintiff "need only establish that his or her claim has 'minimal merit.' " (*Ibid*.) Although " 'the court does not *weigh* the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim.' " (*Ibid*.) "In making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2).)

A plaintiff cannot rely solely on the allegations of the complaint but must produce evidence that is admissible at trial. (*HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 212.)  If the plaintiff fails to do so, the motion to strike is granted.  (*Argentieri v. Zuckerberg* (2017) 8 Cal.App.5th 768, 780.)

Further, "[a]nalysis of an anti-SLAPP motion is not confined to evaluating whether an entire cause of action, as pleaded by the plaintiff, arises from protected activity or has merit.  Instead, courts should analyze each claim for relief — each act or set of acts supplying a basis for relief, of which there may be several in a single pleaded cause of action — to determine whether the acts are protected and, if so, whether the claim they give rise to has the requisite degree of merit to survive the motion."  (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1010.)  "[T]o the extent any acts are unprotected, the claims based on those acts will survive."  (*Id.* at p. 1012.)

We review a trial court's order granting an anti-SLAPP motion de novo, applying that same two-step analysis.  (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820.)  We independently review whether a moving party has made a threshold showing that the challenged cause of action arises from protected activity.  (*Grewal v. Jammu* (2011) 191 Cal.App.4th 977, 988.)

### 2.    Fraud and Conspiracy

"The elements of promissory fraud (i.e., of fraud or deceit based on a promise made without any intention of performing it) are: (1) a promise made regarding a material fact without any intention of performing it; (2) the existence of the intent not to perform at the time the promise was made; (3) intent to deceive or induce the promisee to enter into a transaction; (4) reasonable

13

reliance by the promisee; (5) nonperformance by the party making the promise; and (6) resulting damage to the promisee." (*Behnke v. State Farm General Ins. Co.* (2011) 196 Cal.App.4th 1443, 1453.)

"The elements of a civil conspiracy are (1) the formation of a group of two or more persons who agreed to a common plan or design to commit a tortious act; (2) a wrongful act committed pursuant to the agreement; and (3) resulting damages." (*City of Industry v. City of Fillmore* (2011) 198 Cal.App.4th 191, 212.) Civil conspiracy is not an independent tort, but "a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration. [Citation.] By participation in a civil conspiracy, a coconspirator effectively adopts as his or her own the torts of other coconspirators within the ambit of the conspiracy. [Citation.] In this way, a coconspirator incurs tort liability co-equal with the immediate tortfeasors." (*Id.* at pp. 211-212.)

**B. Application**

**1. Defendants' Alleged Conduct Arose from Protected Activity**

As to the first prong of the anti-SLAPP analysis, Detamore acknowledges that a settlement agreement constitutes protected activity as to the settling parties (see *Cheveldave v. Tri Palms Unified Owners Assn.* (2018) 27 Cal.App.5th 1202, 1213), but argues *sans* authority that the same is not true as to nonparty conspirators such as Jain, nor to mere signatories to the settlement, such as the Supplier Defendants, who have no performance obligations thereunder. We disagree.

"Courts 'have adopted a fairly expansive view of what constitutes litigation-related activities within the scope of section 425.16.' [Citation.] A settlement agreement executed in the

14

context of active litigation is 'made in connection with an issue under consideration or review by a . . . judicial body.' " (*O&C Creditors Group, LLC v. Stephens & Stephens XII, LLC* (2019) 42 Cal.App.5th 546, 566.) When a challenged cause of action is founded upon and would not exist in the absence of protected settlement activity, the cause of action arises from and is based on the settlement agreement, making it subject to the provisions of the anti-SLAPP statute even where the defendant is not party to the agreement. (*Id.* at p. 567 [when a nonparty to a settlement agreement is alleged to have committed a tort respecting the settlement, the nonparty's actions arise from petitioning activity].)

Here, Detamore alleged that defendants conspired with Wheeler to corrupt the Grace and Marina litigation settlement. In thus unifying the parties to allege conspiracy, Detamore cannot separate them to avoid the anti-SLAPP statute. (See *Dowling v. Zimmerman* (2001) 85 Cal.App.4th 1400, 1420 [attorney's negotiation of stipulated settlement in unlawful detainer action was protected conduct].)

## 2. Detamore Offered No Evidence Suggesting Probable Merit

As to the second prong, Detamore argues its claims have probable merit because the 2016 settlement agreement gave Detamore the right to possess 12320 Pico, if not expressly then at least as a matter of reasonable inference. This is so, Detamore argues, because (1) the agreement acknowledged that Wheeler ceded all Advanced Pain Solutions assets to Detamore, and possession of 12320 Pico was an indispensable asset; (2) the agreement's indemnity provision obligated Detamore to indemnify Wheeler for rent he paid to Jain, which Detamore would not have to do if it was not occupying the premises; (3) after the settlement, Detamore took over the property and began

15

paying rent to Jain, which Jain accepted; (4) Jain alleged in its unlawful detainer action not that Detamore had no right to possession but that it had no license to sell marijuana; and (5) Jain failed to challenge Detamore's claim of possession in its anti-SLAPP motion. Detamore adduces as evidence of these facts the declaration of Jason Detamore about the meaning of the settlement agreement, arguing the court was required to accept the declaration as true for anti-SLAPP purposes.

To satisfy its burden on the second prong, Detamore was obligated to produce evidence both of Wheeler's promissory fraud—e.g., a promise, lack of intention to perform, intent to deceive, and nonperformance—and defendants' participation in a conspiracy—e.g., agreement between two or more persons on a common plan to commit a tortious act and a wrongful act committed pursuant to the agreement.

Detamore produced no evidence supporting any of these elements.

### a.     Promise

We must first identify exactly what Wheeler is alleged to have promised Detamore in the settlement agreement.

#### (1)     There was no Promise of Occupancy

Detamore alleged "Defendants and Wheeler intended to induce Plaintiffs into the Settlement Agreement by the misrepresentations made therein *with respect to their intention to perform*." (Emphasis added.) Perform what? Wheeler's only obligation under the settlement agreement was to transfer specified rights and assets to Detamore. The only asset contested here is the 12320 Pico lease.

But the settlement agreement did not identify the lease as a partnership asset and said nothing about Detamore taking it over.

16

Detamore argues the settlement agreement gave Detamore the right to *possess* 12320 Pico. This right was implied, Detamore argues, by the facts that: The agreement obligated Detamore to indemnify Wheeler for rent he paid to Jain, which Detamore would not have to do if it did not occupy the premises; Detamore took over the property and began paying rent to Jain, which Jain accepted; Jain alleged in its unlawful detainer action not that Detamore had no right to possession but that it had no license to sell marijuana; and Jain failed to challenge Detamore's claim of possession in its anti-SLAPP motion.

None of these circumstances implies a right to occupy 12320 Pico. First, Detamore knew Wheeler had no authority to grant such a right, as his lease agreement with Jain expressly forbade transferring the property to a third party without Jain's written consent, which was never given. Second, that Detamore paid rent to Jain indicated only that Jain *allowed* Detamore's occupancy, i.e., agreed to waive the lease's nontransferability clause, not that Detamore had a right to occupy the premises. Any such right arose only from Detamore's informal arrangement with Jain, and extended only so far as Jain and our unlawful detainer law permitted. Third, given that Jain ultimately evicted Detamore, it seems clear that it granted Detamore no lasting right to possess the premises. Finally, that an attorney fails to make a particular argument during litigation does not suggest the parties agreed to implied but unstated contract terms years earlier.

### (2)    There was no "Agreement" Promise

Promissory deceit is "A promise, made without any intention of performing it." (Civ. Code, § 1710.) Detamore argues the pertinent promise here was that Wheeler "agreed" Detamore

17

would operate Grace Medical at 12320 Pico. (We assume Detamore means not that Wheeler promised to *agree* to Detamore's occupancy of 12320 Pico but to *allow* it, or at least to do nothing to interfere with the occupancy.) As noted above, Detamore alleged, "As memorialized in the Settlement Agreement, all parties agreed that the Detamores would own and operate the cannabis business at the location of Grace Medical, the original dispensary, located at 12320 Pico Blvd. to the exclusion of Wheeler."

But Detamore knew Wheeler had no power to control Jain's administration of the lease. " '[P]redictions as to future events, or statements as to future action by some third party, are deemed opinions, and not actionable fraud.' " (*Nissan Motor Acceptance Cases* (2021) 63 Cal.App.5th 793, 823.) Therefore, the pertinent promise could only be Wheeler's promise not to interfere with Detamore's occupancy of 12320 Pico.

> **b. Wheeler's Lack of Intent to Perform; Jain's Agreement with Wheeler to Deceive Detamore**

As to this promise—Wheeler's promise not to interfere with Detamore's occupancy—Detamore identified no evidence that Wheeler intended not to perform on that promise, that Jain agreed with Wheeler to commit a tortious act, or that Jain committed any wrongful act.

The only evidence on these points was Detamore's speculation about the sequence of events as they unfolded after the settlement: Detamore occupied 12320 Pico for only a few months, after which Jain evicted Detamore, ostensibly for operating without a license, then re-let the property to Wheeler, who also had no license. But mere breach of a contract does not

18

establish a prior intention on Wheeler's part not to perform his obligations under the Grace/Marina settlement.

Moreover, nothing about this sequence of events ties Jain to the Grace/Marina settlement negotiations in the first instance or suggests Jain had any arrangement with any defendant relating to the settlement. Nor does any evidence suggest Jain wronged Detamore by evicting Wheeler and reletting the premises to him through his brother.

### c.     Conclusion

Detamore adduced no evidence suggesting a reasonable probability of prevailing at trial on its cause of action for conspiracy to defraud. Therefore, the court properly granted defendants' special motion to strike the eighth cause of action.

## C.     New Trial

Detamore argues it was unfairly surprised by the trial court's decision to interpret the settlement agreement as conveying no leasehold or possessory interest in 12320 Pico, as defendants did not make that argument in their anti-SLAPP motion. It argues that Wheeler's declaration that the settlement agreement conveyed a leasehold interest to Detamore constituted new evidence justifying a new trial, and the trial court's refusal to consider the declaration rendered its ruling unsupported by substantial evidence. On these three bases, Detamore argues the court should have granted its motion for a new trial. We disagree.

Section 657 governs motions for new trial, and provides, in pertinent part: "The verdict may be vacated, and any other decision may be modified or vacated, in whole or in part, and a new or further trial granted on all or part of the issues, on the application of the party aggrieved, for any of the following causes,

19

materially affecting the substantial rights of such party: [¶] . . . [¶] . . . Accident or surprise, which ordinary prudence could not have guarded against[;] . . . [¶] . . . Newly discovered evidence, material for the party making the application, which he could not, with reasonable diligence, have discovered and produced at the trial[;] [¶] . . . [¶] . . . [and] [i]nsufficiency of the evidence to justify the verdict or other decision, or the verdict or other decision is against law."

Detamore moved for new trial under these provisions, arguing that the court's ruling on the anti-SLAPP motion raised a new material issue addressing a concern not raised by the parties (right to possession of the subject property), and therefore constituted surprise, which deprived Detamore of the opportunity to fully brief the issue of possession with, among other things, Wheeler's declaration. Detamore also argued that given the court's surprise sua sponte finding on the issue of possession, the court should have permitted Detamore to introduce parol evidence such as Wheeler's declaration to clarify any ambiguity in the settlement agreement found by the court.

We have discovered only one published case applying the new trial procedure to an anti-SLAPP ruling, and in that case the ruling disposed of the entire case, not merely one cause of action, as here. (*Aron v. WIB Holdings* (2018) 21 Cal.App.5th 1069.) But for present purposes we will assume a new trial may be had when a special motion to strike results in the removal of one of several causes of action. We will also, for argument's sake, overlook the procedural infirmities of Detamore's motion.

Cutting to the chase, we conclude first that Detamore's burden under the second prong of the anti-SLAPP analysis was always to demonstrate a reasonable probability of prevailing on

20

the merits, which it could hardly do without first establishing its right to at least occupy 12320 Pico. That defendants did not specifically argue lack of possessory rights in their motion did not relieve Detamore of the obligation to prove up its case.

Second, pursuant to the discussion above, no evidence Detamore offered, even in support of its motion for new trial, established its right to occupy 12320 Pico other than at Jain's sufferance. Even were Wheeler's declaration in other litigation as to the meaning of the settlement agreement probative, and even had Wheeler expanded substantially on Jason Detamore's declaration already offered in opposition to the anti-SLAPP motion (which he did not), Wheeler declared only that the 12320 Pico lease was "the lease pursuant to which the Joint Venture continues to operate." That does not mean, and Wheeler did not say and Detamore does not claim, the settlement agreement transferred the lease to Detamore.

We therefore conclude: Wheeler's declaration did not constitute new evidence supporting a new trial; Detamore was not unfairly surprised that the possession issue arose at the hearing; and the anti-SLAPP ruling was not based on insufficient evidence. Therefore, Detamore's new trial motion was properly denied.

## D. Conclusion

Given this result, we need not reach Jain's arguments that Detamore's claim was precluded by the applicable limitations period and the litigation privilege, and Detamore failed to establish reasonable reliance on Wheeler's alleged fraud.

21

## DISPOSITION

The order granting defendants' special motion to strike is affirmed.  Respondents are to recover their costs on appeal.

NOT TO BE PUBLISHED


CHANEY, J.


We concur:


ROTHSCHILD, P. J.


WEINGART, J.